UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CESAR MATEO,

                                        Plaintiff,
                                                            9:10-CV-1103
v.                                                          (GLS/GHL)

M. GUNDRUM, MARTIN,
DANIEL MARTUSCELLO,

                                        Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

CESAR MATEO, 01-A-4789
Plaintiff *pro se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. ERIC T. SCHNEIDERMAN                    JAMES SEAMAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Cesar

Mateo alleges that Defendants retaliated against him for filing grievances and lawsuits.  (Dkt.

No. 21.)  Currently pending before the Court is Defendants' motion to dismiss for failure to state

a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 27.)  For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.      BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (Dkt. No. 21) ("the complaint") and from documents attached to the complaint:

Plaintiff, an inmate of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed twenty-nine grievances between May 5, 2003, and November 16, 2009. (Dkt. No. 21 at 27.[1]) Plaintiff alleges that there is a wide-reaching conspiracy against him, motivated "racially and personally" because Plaintiff has filed so many grievances against DOCCS staff members. *Id*. at 9.

In June 2010, Plaintiff arrived at Coxsackie Correctional Facility. *Id.* at 21.

On June 19, 2010, Plaintiff wrote to Defendant Daniel Martuscello, Superintendent of Coxsackie Correctional Facility. *Id.* at 29. Plaintiff alleged that an officer would not let him keep an appointment at the facility's law library. *Id*. He alleged that this was "causing [him] to miss a Court Order[ed] date line." *Id.* at 30. He alleged that the officer was acting as part of a wide-ranging conspiracy against him that followed him from facility to facility. *Id*. He also stated that his repeated requests for dental care were being denied. *Id*. He requested access to the law library, proper dental care, and an end to the conspiracy. *Id.* at 30-31.

On August 7, 2010, Plaintiff filed a grievance. *Id.* at 32. He complained that he had discovered a dead insect in his medically prescribed meal. *Id*. He stated that the officers in the cafeteria refused to provide him with another meal. *Id*. He noted that the "incident occurred a

---

[1]      Page numbers in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system.

day after I was interviewed by a correction sergeant in reference to my previously filed grievance regarding not receiving my prescribed diet . . ." *Id*. at 33.

Plaintiff wrote a letter to the Hon. Stan L. Pritzker, Acting Justice of the Washington County Supreme Court. *Id*. at 14. Plaintiff complained that he was being harassed and retaliated against by prison staff. *Id*. In the letter, Plaintiff stated that the day after he filed his grievance regarding his meal, an officer came to his cell and told him to pack up his property to move out of that unit and into Division C-3. *Id*. The officer told Plaintiff that he would be beaten and said "hope you'll enjoy going to the hospital." *Id*. Plaintiff asked Judge Pritzker to protect his rights. *Id*.

In a grievance filed with the Inmate Grievance Resolution Committee, Plaintiff alleged that on August 9, 2010, before he moved to Division C-3, an officer came to his cell and told him to go see the Sergeant. *Id.* at 16. The Sergeant asked if Plaintiff had written grievances. *Id*. When Plaintiff said that he had, the Sergeant threatened to frame him, write a false misbehavior report, and restrict his privileges. *Id*.

Letters to Plaintiff from DOCCS Deputy Commissioner Lucien J. Leclaire dated August 12, 2010, and August 17, 2010, indicate that Plaintiff had filed grievances regarding the visiting room policy and meals at Coxsackie. *Id.* at 24-25.

Plaintiff alleges that Defendant Correction Officer M. Gundrum, the officer in charge of Division C-3, "is known for retaliating [against and] harassing inmates on behalf of his fellow[] officers." *Id.* at 7. Plaintiff alleges that Defendant Gundrum stopped by Plaintiff's cell on September 8, 2010, and said "I'm gonna have fun with you." *Id.* Plaintiff alleges that Defendant Gundrum issued a false misbehavior report against him later that day. *Id.* Plaintiff has attached

a copy of the misbehavior report to his amended complaint.  *Id.* at 18.  In the report, Defendant

Gundrum stated that he:

> was supervising C-3 Division inmates during the morning chow run.
> At the completion of the meal period I instructed all C-3 inmates to
> exit the mess hall and line up in the Assembly in cell order.  As the
> division was lining up I observed [Plaintiff] to be having a loud
> conversation with [another inmate], who was standing to the side of
> [Plaintiff].  Both inmates were ordered to cease creating a disturbance
> and [the other inmate] was ordered to line up in his proper place.  No
> further incident.

*Id.*  Defendant Gundrum charged Plaintiff with violating Rules 104.13 (creating a disturbance)

and 109.12 (directions relating to movement).  *Id.*  In the complaint, Plaintiff disputes Defendant

Gundrum's report that he was having a "loud conversation."  Plaintiff alleges that he spoke

"moderately and politely" to the other inmate in order to recover "his State provided Workbook."

*Id.* at 20.

Defendant Martin conducted the disciplinary hearing on the misbehavior report on

September 10, 2010.  *Id.* at 8.  Plaintiff alleges that Defendant Martin was belligerent and

verbally harassed Plaintiff and threatened him during the hearing.  *Id.*  Specifically, Plaintiff

alleges that Defendant Martin said:

> This is a small facility . . . We are all one here . .. You wrote
> grievances against officers and pissed them off . . . I know you from
> interviewing you for grievances . . . We are gonna make your stay at
> this facility uncomfortable . . . You have it coming . . . You have
> more tickets on their way . . . We are gonna fuck with you.

*Id.*  Plaintiff alleges that Defendant Martin did not allow him "to properly state[] [his] defense

and objection to the inmate misbehavior report and charges."  *Id.*  Defendant Martin found

Plaintiff guilty of the charges.  *Id.* at 8, 19.  Defendant Martin sentenced Plaintiff to thirteen days'

loss of recreation and commissary privileges and one work task.  *Id*. at 20.

Plaintiff appealed Defendant Martin's disposition to Defendant Martuscello.  *Id.*  Plaintiff complained that he was "not afforded the opportunity to properly and fully state[] his objections and defense" at the disciplinary hearing.  *Id.*  He complained that Defendant Martin had acted with "belligerence [and] malice" and threatened to issue fabricated misbehavior reports and beat him up.  *Id.*  Plaintiff stated that he believed that Defendant Gundrum wrote the misbehavior report "in retaliation [] for his grievances and lawsuits against correction staff[] officers." *Id.* at 22.  He noted that the misbehavior report "does not contain allegations that [Plaintiff] . . . failed to follow the officer's direction."  *Id.*

Plaintiff alleges that on September 10, 2010, he heard another inmate being beaten.  *Id.* at 38.  He wrote to Brian Fischer, the Commissioner of DOCCS, about what he had heard.  *Id*. at 40.  Lucien Leclaire responded that "[i]t is the Department's policy not to respond to an inmate regarding another inmate."  *Id.*

On September 15, 2010, Plaintiff filed his original complaint in this action.  (Dkt. No. 1.)

Plaintiff alleges that Defendant Martuscello denied him dental care in retaliation for his grievances.  (Dkt. No. 21 at 9.)  Specifically, Plaintiff alleges that on September 16, 2010, he went to see dental staff.  *Id.* at 10.  The "dental staff said to me that they were going to fix the tooth to cause me pain."  *Id.*  Dental Technician John Doe then "improperly, intentionally and maliciously" made direct contact with the nerve of Plaintiff's tooth while filling a cavity.  *Id.*

On October 16, 2010, Plaintiff wrote to Judge Sharpe.  *Id.* at 36.  He complained that when he saw the prison dentist, the dentist berated him and refused to give him dental care.  *Id*.

On November 10, 2010, Plaintiff wrote to Judge Sharpe.  *Id.* at 35.  He complained that

the filling in his tooth was still causing him pain. *Id*.

On January 10, 2011, Plaintiff wrote to the Chairman of the State Commission of Correction. *Id.* at 34. He stated that Defendant Gundrum was threatening and harassing him by calling him "ballwasher." *Id.*

Plaintiff filed the amended complaint on February 3, 2011. (Dkt. No. 21.)

Plaintiff alleges that he has developed high blood pressure as a result of the harassment by DOCCS officials. *Id.* at 9. Plaintiff fears for his "life, health, [and] safety." *Id.* at 3. Plaintiff requests "an investigation by an independent agency" if he is "found dead or un[]responsive . . . in the custody of Defendants." *Id.* Plaintiff requests "this Court's special attention and intervention in this matter, as well as its monitoring, permanently." *Id.* at 1. Plaintiff requests a root canal to remedy the damage to his tooth. *Id.* at 13.

Plaintiff alleges that he did not exhaust his administrative remedies because his "speech has been chilled" and "inhibited due to threats of physical harm and . . . fabricated misbehavior reports." *Id.* at 2, 4.

Defendants now move to dismiss the complaint. (Dkt. No. 27.) Plaintiff has opposed the motion. (Dkt. No. 28.) Defendants have filed a reply. (Dkt. No. 29.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

6

Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

shown -- that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation

omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct.

at 1949.

## III.     ANALYSIS

### A.      Claims Against Defendant Gundrum

Construed broadly, the complaint alleges that Defendant Gundrum retaliated against

Plaintiff, violated his due process rights, and violated his Eighth Amendment rights.  Defendants

have addressed only the retaliation claim.  For the reasons discussed below, I recommend that the

7

Court deny Defendants' motion to dismiss the retaliation claim but *sua sponte* dismiss Plaintiff's due process and Eighth Amendment claims.

      1.   <u>Retaliation</u>

Defendants argue that the complaint fails to state a retaliation claim against Defendant Gundrum. (Dkt. No. 27-3 at 8-10.[2])  I find that the complaint alleges facts plausibly suggesting that Plaintiff was engaged in protected conduct, that Defendant Gundrum took adverse action against Plaintiff, and that Defendant Gundrum had a retaliatory motive for the adverse action.

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

---

   [2]   Page numbers in citations to Defendants' Memorandum of Law refer to the page numbers in the original document.

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Defendants argue that Plaintiff has not sufficiently alleged that he was engaged in protected conduct because he "fails to indicate who his lawsuits and grievances were against, what they were about, or why they would motivate these defendants to retaliate against him." (Dkt. No. 27-3 at 10.) Defendants cite *Green v. Phillips*, No. 04 Civ. 10202, 2006 U.S. Dist. LEXIS 14960, at *7-9, 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006)[3], which states that plaintiffs asserting retaliation claims "must plead the claim with particularity." The *Green* court held that in order to state a retaliation claim with sufficient particularity, a prisoner must allege who he filed complaints and grievances against, what the grievances were about, or why they would motivate the defendants to retaliate. *Id*. For this proposition, the *Green* court cited *Brown v. Middaugh*, 41 F. Supp. 2d 172, 191 (N.D.N.Y. 1999). In *Brown*, a summary judgment case, the court did not say anything about a heightened pleading standard for retaliation claims.

---

[3]     Defendants served a copy of this unpublished decision on Plaintiff with their moving papers. (Dkt. No. 27-8.)

Rather, the court noted that plaintiffs asserting retaliation claims "bear[] a heightened *burden of proof*." *Id*. (emphasis added). For this proposition, *Brown* cites *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In *Colon*, the Second Circuit stated that because retaliation claims can be easily fabricated, "summary judgment may be granted if, at the summary judgment stage, the claim appears insubstantial." *Id*. That maxim is inapplicable here, of course, because this case has not yet reached the summary judgment stage. Thus, although courts must scrutinize retaliation claims with particular care, the normal rules of pleading apply. Under federal pleading rules, "Section 1983 claims need not be plead with particularity, but may be averred generally." *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) ("[P]laintiffs in federal court generally need not plead with particularity. Rule 9(b), which establishes the heightened pleading standard for fraud claims, is an exception."). Plaintiff has met the federal pleading standard, discussed in more detail in Section II, by generally averring facts plausibly suggesting that he filed grievances against prison officials. It is black-letter law that the filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996).

Even if the law did require a plaintiff to allege facts regarding protected conduct with the particularity that Defendants demand, Plaintiff has done so. Plaintiff does, in fact, allege who his lawsuits and grievances were against and what they were about. Plaintiff's complaint includes a list of the twenty-nine grievances he filed between May 5, 2003, and November 16, 2006. (Dkt. No. 21 at 27.) The complaint includes a copy of a letter that Plaintiff wrote to Defendant Martuscello about law library access and dental care. *Id.* at 29-31. The complaint includes a

copy of the grievance that Plaintiff filed about finding an insect in his food.  *Id*. at 32-33.

Therefore, Plaintiff has alleged facts plausibly suggesting that he was engaged in protected

conduct.

Regarding the second element, the Second Circuit defines "'adverse action' objectively,

as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

exercising ... constitutional rights.'"  *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d

346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003))

(emphasis removed).  The filing of a misbehavior report is an adverse action.  *Id*. at 384.[4]

Therefore, I find that Plaintiff has alleged facts plausibly suggesting that Defendant Gundrum

took adverse action against him.

Several factors may be considered in determining whether a causal connection exists

between the plaintiff's protected activity and a prison official's actions.  *Baskerville v. Blot*, 224

F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873).  Those factors include: (i)

the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the

inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv)

---

[4]        In their reply, Defendants argue that Plaintiff relies on *Gill* "for the overly broad
proposition that filing any false misbehavior report constitutes an adverse action . . ."  (Dkt. No.
29-1 at 4.)  Defendants correctly note that the plaintiff in *Gill* sufficiently pleaded adverse action
by alleging "the filing of false misbehavior reports . . . and his sentence of three weeks in
keeplock," whereas here Plaintiff was not sentenced to keeplock.  *Id.* (quoting *Gill*, 389 F.3d at
384).  Defendants cite an unpublished case from the Southern District of Texas for the
proposition that "the disciplinary loss of commissary and recreation privileges for 20 days is not
'so chilling or disturbing, that it would silence a person of ordinary firmness from future First
Amendment activities.'" *Id*. (quoting *Moore v. Palacios*, No. C-03-330, 2006 U.S. Dist. LEXIS
86567, at *21, 2006 WL 3448001, at * 7 (S.D. Tex. Nov. 27, 2006)).  According to West's Key
Cite service, the case has never been cited by any court.  I have searched without success for a
case from any court within the Second Circuit expressing the same holding.  I therefore do not
find *Moore* persuasive.

statements by the defendant concerning his or her motivation.  *Id.* (citing *Colon*, 58 F.3d at 872-73).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  *Id.*

Regarding temporal proximity, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted).  No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'"  *Id.* (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).  The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection.  *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555) (suggesting the lapse of five months between protected activity and retaliation may show a causal connection).  Here, Defendant Gundrum filed the misbehavior report against Plaintiff within a month of Plaintiff filing grievances about the insect in his food and threats by the unnamed Sergeant.  Therefore, Plaintiff has alleged facts plausibly suggesting the first factor.

Regarding the second factor, the complaint does not allege any facts about Plaintiff's prior disciplinary record.  Therefore, this factor weighs neither in favor of nor against finding a causal connection between Plaintiff's protected conduct and Defendant Gundrum's adverse action.

Regarding the third factor, vindication of the inmate after a hearing may constitute circumstantial evidence of a defendant's retaliatory motive.  *Gayle*, 313 F.3d at 683 ("A false reason for the report's issuance would support the inference that the real reason was the improper

one: retaliation."). Here, Plaintiff was not vindicated at the disciplinary hearing. Rather, he was found guilty. Therefore, Plaintiff has not alleged facts plausibly suggesting the third factor.

The fourth factor involves analyzing any statements by the defendant concerning his or her motivation. Plaintiff alleges that Defendant Gundrum stopped by his cell shortly before he wrote the misbehavior report and said "I'm gonna have fun with you." (Dkt. No. 21 at 7.) Therefore, Plaintiff has alleged facts plausibly suggesting the fourth factor.

Thus, two of the factors weigh in favor of finding a causal connection, one weighs against, and one is inconclusive. On balance, construing the complaint liberally as I am required to do, I find that Plaintiff has alleged facts plausibly suggesting a causal connection between his protected conduct and Defendant Gundrum's adverse action.

This does not, however, end the retaliation inquiry. Even where an inmate plaintiff meets his initial burden, a defendant is entitled to judgment if he or she can demonstrate that he or she would have taken the same action against the plaintiff absent any retaliatory motivation. *See Gayle*, 313 F.3d at 682. Courts employ a "'presumption that a prison official's acts to maintain order are done for a proper purpose.'" *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (quoting *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir.1995)), cert. denied, 525 U.S. 907 (1998). Often defendants accused of filing false misbehavior reports meet their burden by showing that "there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle*, 313 F.3d at 682.

Defendant Gundrum charged Plaintiff with violating Rule 109.12. Rule 109.12 states that "[a]n inmate shall follow all facility regulations and directions relating to movement within the facility" N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(10)(iii). In Coxsackie's Inmate

13

Orientation Handbook, the section on "Inmate Movement" states that "[t]here will be no talking in the corridors." (Dkt. No. 27-2 at 2.) Defendants argue that "it is clear that Officer Gundrum would have issued [P]laintiff the subject misbehavior report even in the absence of a retaliatory motive" because "[P]laintiff admits he was talking [] in violation of Rule 109.12, which incorporates by reference the facility regulation regarding not talking during movement." (Dkt. No. 27-3 at 10.) In opposition to the motion to dismiss, Plaintiff argues that he did not violate the rule because the facility regulation prohibits "talking in the *corridors*" and he was talking in the Assembly area. (Dkt No. 28 at 2.) In reply, the Deputy Superintendent of Security at Coxsackie declares that "[t]he corridors include any and all corridors in the facility, including . . . the assembly area outside the mess hall . . . ." (Dkt. No. 29 ¶ 5.) Although the Court may arguably consider the rule and the facility regulation[5], the parties' dispute about the meaning of the word "corridors" raises an evidentiary issue that is not appropriately considered at this stage in the litigation. Thus, it is premature to find that Defendant Gundrum would have issued the misbehavior report in the absence of a retaliatory motive. Therefore, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's retaliation claim against Defendant Gundrum.

      2.    <u>Due Process</u>

Plaintiff alleges that Defendant Gundrum violated his right to due process. (Dkt. No. 21

---

[5]     "In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (punctuation omitted). It is not clear that Plaintiff's complaint "solely" relies on the rule and the facility regulation, but I will consider them for the purposes of this motion.

at 12.)  Defendants have not addressed this claim.  I recommend that the Court dismiss the claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) without leave to amend.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Here, Plaintiff lost recreation and commissary privileges for thirteen days as a result of the misbehavior report that Defendant Gundrum filed.  The loss of such privileges "does not give rise to a protected liberty interest . . ." *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006).  Therefore, I recommend that the Court *sua sponte* dismiss the due process claim against Defendant Gundrum.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint.  *See Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).  In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).  Here, Plaintiff has already amended his complaint once.  In addition, Plaintiff could not amend his complaint to allege that he was deprived of a protected liberty interest because it is not possible for him to allege that he was sentenced to anything other than a loss of privileges.  Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's due process claim against Defendant Gundrum

15

without leave to amend.

           3.      <u>Eighth Amendment</u>

      Plaintiff alleges that Defendant Gundrum violated his Eighth Amendment rights.  (Dkt. No. 21 at 12.)  Defendants have not addressed this claim.  I recommend that the Court dismiss the claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) with leave to amend.

      The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).

      Eighth Amendment claims involve both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

      Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Gundrum denied him the minimal civilized measure of life's necessities or subjected him to extreme deprivations.  He alleges merely that Defendant Gundrum filed a misbehavior report against him that resulted in him losing privileges for less than two weeks.  Therefore, I recommend that the Court *sua sponte* dismiss the Eighth Amendment claim against Defendant Gundrum.  Because there is a slight possibility that Plaintiff could amend his complaint to allege some behavior by Defendant Gundrum that subjected Plaintiff to some extreme deprivation not discussed in the operative

complaint, I recommend that the Court grant Plaintiff leave to amend the Eighth Amendment claim.

### B.     Claims Against Defendant Martin

Construed broadly, the complaint alleges that Defendant Martin retaliated against Plaintiff, violated his right to due process, and violated his Eighth Amendment rights. Defendants have addressed the retaliation claim and the due process claim.  (Dkt. No. 27-3 at 10-11.)  For the reasons discuss below, I recommend that the Court deny Defendants' motion to dismiss the retaliation claim, grant the motion to dismiss the due process claim without leave to amend, and *sua sponte* dismiss the Eighth Amendment claim with leave to amend.

### 1.     Retaliation

Defendants argue that the complaint does not state a retaliation claim against Defendant Martin because "the alleged verbal threats by Sgt. Martin do not constitute adverse action."  (Dkt. No. 27-3 at 10.)

> Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered. *See, e.g., Hepworth v. Suffolk County*, No. 2:02-cv-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment" rights). Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action") (citing *Dawes*, 239 F.3d at 493, for the proposition that "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment")*;*

> *Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y.2005)
> (defendant's "alleged statements to plaintiff about there being 'no
> secrets in prison' and that plaintiff would 'have to pay the
> consequences' for filing a grievance against [defendant] d[id] not give
> rise to a First Amendment retaliation claim"); *Cruz v. Hillman*, No.
> 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002)
> (allegation that defendant made statement which "expressed his
> dislike for inmates who file civil lawsuits, and later came to plaintiff's
> cell and said 'Green Haven is an open battlefield, so be careful' " was
> insufficient to state retaliation claim).

*Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) (allegation that correctional

officer "chastised" prisoner and said that he was "getting tired of" prisoner filing grievances

insufficient to state a retaliation claim).

Here, accepting the allegations of the complaint as true, Plaintiff has alleged that

Defendant Martin's comments were specific enough and uttered in a context that would deter a

similarly situated individual of ordinary firmness from exercising constitutional rights.  The

complaint alleges that Defendant Martin told Plaintiff that "[w]e are gonna make your stay at this

facility uncomfortable . . . You have it coming . . . We are gonna fuck with you" immediately

before finding him guilty and sentencing him to a loss of privileges.  (Dkt. No. 21 at 8.)

Therefore, I recommend that the Court deny Defendants' motion to dismiss the retaliation claim

against Defendant Martin.

> 2.    Due Process

Defendants argue that the complaint does not state a procedural due process claim against

Defendant Martin because Plaintiff was not deprived of a cognizable liberty interest.  (Dkt. No.

27-3 at 11.)  Defendants are correct.  As discussed above in Section III(A)(2), Plaintiff has not

and cannot allege that he was deprived of any cognizable liberty interest when he was sentenced

to thirteen days' loss of privileges.  Therefore, I recommend that the Court dismiss Plaintiff's due process claim against Defendant Martin without leave to amend.

              3.     <u>Eighth Amendment</u>

Plaintiff alleges that Defendant Martin violated his Eighth Amendment rights.  (Dkt. No. 21 at 12.)  Defendants have not addressed this claim. For the same reasons discussed in Section III(A)(3) regarding Defendant Gundrum, I recommend that the Court dismiss the Eighth Amendment claim against Defendant Martin with leave to amend.

## C.    **Claims Against Defendant Martuscello**

Defendants argue that the complaint fails to state a claim against Defendant Martuscello because it does not allege facts plausibly suggesting that he was personally involved in any constitutional violation.  (Dkt. No. 27-3 at 12-13.)  Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory

personnel may be considered "personally involved" if they (1) directly participated in the

violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) had

been grossly negligent in managing subordinates who caused the violation, or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]

      Here, Plaintiff alleges that Defendant Martuscello "is aware of the retaliation and

harassment by his officers against me" and "has been forwarded many of my letters and

grievances, and failed to protect my rights from retaliation as my custodian." (Dkt. No. 21 at 8.)

A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient

to establish that the official "failed to remedy that violation after learning of it through a report or

appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the

violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See

also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that

allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for

---

      [6]       In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme
Court ruled that where the underlying constitutional claim is a claim of intentional
discrimination, a supervisory official's liability must be judged by the official's purpose rather
than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet
issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the
Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v.
United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for
the purposes of this motion that *Colon* remains good law.

investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).

To the extent that Plaintiff claims that Defendant Martuscello was personally involved because he affirmed Defendant Martin's disciplinary disposition, that argument is also without merit. *Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009); *Woodward v. Mullah*, No. 08-CV-463A, 2009 WL 4730309, at *2-3 (W.D.N.Y. Dec. 7, 2009).[7]  Although the Second Circuit once held that allegations that a superintendent affirmed a prisoner's conviction on administrative appeal were sufficient to allow the case to survive summary judgment[8], district courts in this Circuit have often distinguished that case by noting that liability only attaches if the supervisory official "proactively participated in reviewing the administrative appeals as opposed to merely rubber-stamping the results." *Woodward,* 2009 WL 4730309, at *3.  Here, Plaintiff does not allege any facts plausibly suggesting that Defendant Martuscello "proactively participated" in reviewing Defendant Martin's disciplinary disposition.

Finally, Plaintiff alleges that he "is being denied dental care by Martuscello at his facility in retaliation [for] my grievances."  (Dkt. No. 21 at 9.)  However, Plaintiff does not allege any facts plausibly suggesting that Defendant Martuscello was personally involved with the painful filling that Plaintiff alleges he received on September 16, 2010, or the incident on October 16, 2010, when the prison dentist yelled at him.  Therefore, I recommend that the Court dismiss Plaintiff's claim against Defendant Martuscello with leave to amend.

---

[7]      The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[8]      *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

D.     **Claims Against DOCCS**

Plaintiff names DOCCS as a defendant.  (Dkt. No. 21 at 3.)  Defendants argue that any claims against DOCCS must be dismissed pursuant to the Eleventh Amendment.  (Dkt. No. 27-3 at 14.)  Defendants are correct.  *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001); *Richards v. Appellate Div.*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) ("[A] state is absolutely immune from any action brought against it in federal court by a citizen of its own state, even if only declaratory or injunctive relief is sought" and immunity extends to "agencies of the state.").  Therefore, I recommend that the Court dismiss Plaintiff's claims against DOCCS without leave to amend.

E.     **Claims Against Defendant Doe**

Defendants argue that the claims against the John Doe dental technician should be dismissed because the "allegation merely parrots the elements of a medical indifference claim [and] the notion that a dental technician would engage in the sophomoric act alleged here simply defies common sense."  (Dkt. No. 27-3 at 11.)

I note that Defendant Doe has not yet been identified and served and thus has not appeared in this action.  It is therefore premature for defense counsel to be asserting arguments on Defendant Doe's behalf.  Moreover, Plaintiff's claim against Defendant Doe is sufficiently well-pleaded to withstand *sua sponte* review pursuant to 28 U.S.C. § 1915(e)(2).  Plaintiff has alleged facts plausibly suggesting that his tooth caused him extreme pain and that the John Doe dental technician was deliberately indifferent to that pain.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  Therefore, I recommend that the Court deny Defendants' motion to dismiss the claims against the John Doe dental technician.

22

I caution Plaintiff, however, that he must move quickly to identify and serve the John Doe dental technician.  Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within **120 days** after the filing of the complaint.  Fed. R. Civ. P. 4(m).  This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be served with the summons and complaint within **sixty (60) days** of the filing of the complaint.  N.D.N.Y. L.R. 4.1(b).  Plaintiff filed his amended complaint asserting allegations against the John Doe dental technician on February 3, 2011.  (Dkt. No. 21.)  Accordingly, both of the sixty-day and the 120-day deadlines have expired here.  Therefore, I order Plaintiff to identify and serve the John Doe dental technician within sixty days of the date of any order adopting this Report-Recommendation.

### F.    Conspiracy Claims

The complaint repeatedly alleges the existence of a wide-ranging conspiracy against Plaintiff, motivated "racially" and in retaliation for Plaintiff's filing of grievances and lawsuits. (Dkt. No. 21 at 9.)  Defendants did not address Plaintiff's conspiracy claims in their moving papers.  However, in their reply papers they argue that the conspiracy claims should be dismissed.  (Dkt. No. 29-1 at 1-3.[9])  Arguments first raised in reply briefs are disfavored, but the Court has the discretion to consider them.  *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).  I will do so here.

Federal civil rights conspiracy claims may arise under two statutes: 42 U.S.C. §§ 1983

---

[9]    Page numbers in citations to Defendants' Reply Memorandum of Law refer to the page numbers in the original document.

and 1985.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two

or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  "A complaint

containing only conclusory, vague, or general allegations of conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss."  *Leon v. Murphy*, 988 F.2d 303, 311

(2d Cir. 1993) (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam)).  A

mere allegation that defendants have violated a plaintiff's constitutional rights pursuant to a

conspiracy is insufficient to state a claim.  *Zembiec v. Cnty. of Monroe*, 766 F. Supp. 2d 484, 498

(W.D.N.Y. 2011).  "To survive a motion to dismiss, [a] plaintiff must include some facts in his

complaint tending to show that [the] defendants acted in a willful manner, culminating in an

agreement, understanding or 'meeting of the minds,' that violated his rights . . . " *McLaurin v.*

*New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005) (punctuation omitted).

Here, the complaint does not allege any "meeting of the minds."  Rather, it simply alleges

that DOCCS and its officers "are acting maliciously . . . in a departmental and facility, statewide,

illegal conspiracy, covered-up under 'code of silence' . . ."  (Dkt. No. 21 at 8.)  The complaint

includes no facts tending to show that there was any "meeting of the minds."  Therefore, I

recommend that the Court dismiss Plaintiff's § 1983 conspiracy claim with leave to amend.

To state a cause of action for conspiracy under 42 U.S.C. § 1985(3), "a plaintiff must

allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal

protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in

furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a

24

deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The conspiracy must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus . . ." *Id*. Here, as discussed above, Plaintiff has not sufficiently alleged that a conspiracy existed. Therefore, I recommend that the Court dismiss Plaintiff's §1985 conspiracy claim with leave to amend.

      **ACCORDINGLY**, it is

      **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 27) be **GRANTED IN PART AND DENIED IN PART**. I recommend that the motion be **granted** as to the due process claim against Defendant Martin without leave to amend, all claims against Defendant Martuscello with leave to amend, all claims against DOCCS without leave to amend, and the conspiracy claims with leave to amend. I recommend that the motion be **denied** as to the retaliation claims against Defendants Gundrum and Martin and the claims against the John Doe dental technician; and it is further

      **RECOMMENDED** that the Court *sua sponte* dismiss the due process claim against Defendant Gundrum without leave to amend and the Eighth Amendment claims against Defendants Gundrum and Martin with leave to amend; and it is further

      **ORDERED** that the Clerk provide Plaintiff with a copy of *Woodward v. Mullah*, No. 08-CV-463A, 2009 WL 4730309 (W.D.N.Y. Dec. 7, 2009) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009); and it is further

      **ORDERED** that Plaintiff identify and serve the John Doe dental technician within sixty days of any order adopting this Report-Recommendation.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 30, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge