UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CESAR MATEO,

                            Plaintiff,

                                                                       9:10-CV-1103
v.                                                           (GLS/TWD)

M. GUNDRUM, MARTIN,
DANIEL MARTUSCELLO,

                            Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

CESAR MATEO, 01-A-4789
Plaintiff *pro se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. ERIC T. SCHNEIDERMAN                      JAMES SEAMAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Cesar Mateo alleges that Defendants retaliated against him for filing grievances and lawsuits. (Dkt. Nos. 1, 21, 39.) The matter is currently before the Court for screening of Plaintiff's second amended complaint. (Dkt. No. 39.)

I.     **FACTUAL AND PROCEDURAL SUMMARY**

    A.     **Allegations of the Amended Complaint**

The currently operative complaint in this action is the amended complaint. Plaintiff, an inmate of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that he filed twenty-nine grievances between May 5, 2003 and November 16, 2009. (Dkt. No. 21 at 27.[1]) Plaintiff alleges that there is a wide-reaching conspiracy against him, motivated "racially and personally" because Plaintiff has filed so many grievances against DOCCS staff members. *Id*. at 9.

In June 2010, Plaintiff arrived at Coxsackie Correctional Facility. *Id.* at 21.

On June 19, 2010 Plaintiff wrote to Defendant Daniel Martuscello, Superintendent of Coxsackie Correctional Facility. *Id.* at 29. Plaintiff alleged that an officer would not let him keep an appointment at the facility's law library. *Id*. He alleged that this was "causing [him] to miss a Court Order[ed] date line." *Id.* at 30. He alleged that the officer was acting as part of the conspiracy against him. *Id*. He also stated that his repeated requests for dental care were being denied. *Id*. He requested access to the law library, proper dental care, and an end to the conspiracy. *Id.* at 30-31.

On August 7, 2010 Plaintiff filed a grievance. *Id.* at 32. He complained that he had discovered a dead insect in his medically prescribed meal. *Id*. He stated that the officers in the cafeteria refused to provide him with another meal. *Id*. He noted that the "incident occurred a day after I was interviewed by a correction sergeant in reference to my previously filed grievance

---

    [1]     Page numbers in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system.

regarding not receiving my prescribed diet . . . ." *Id*. at 33.

Plaintiff wrote a letter to the Hon. Stan L. Pritzker, Acting Justice of the Washington County Supreme Court. *Id.* at 14. Plaintiff complained that he was being harassed and retaliated against by prison staff. *Id*. In the letter, Plaintiff stated that the day after he filed his grievance regarding his meal, an officer came to his cell and told him to pack up his property to move out of that unit and into Division C-3. *Id*. The officer told Plaintiff that he would be beaten and said "hope you'll enjoy going to the hospital." *Id*. Plaintiff asked Judge Pritzker to protect his rights. *Id*.

In a grievance filed with the Inmate Grievance Resolution Committee, Plaintiff alleged that before he moved to Division C-3, an officer came to his cell and told him to go see the Sergeant. *Id.* at 16. The Sergeant asked if Plaintiff had written grievances. *Id*. When Plaintiff said that he had, the Sergeant threatened to frame him, write a false misbehavior report, and restrict his privileges. *Id*.

Plaintiff alleges that Defendant Correction Officer M. Gundrum, the officer in charge of Division C-3, "is known for retaliating [against and] harassing inmates on behalf of his fellow[] officers." *Id.* at 7. Plaintiff alleges that Defendant Gundrum stopped by Plaintiff's cell on September 8, 2010 and said "I'm gonna have fun with you." *Id*. Plaintiff alleges that Defendant Gundrum issued a false misbehavior report against him later that day. *Id*. Plaintiff attached a copy of the misbehavior report to his amended complaint. *Id.* at 18. In the report, Defendant Gundrum stated that he:

> was supervising C-3 Division inmates during the morning chow run. At the completion of the meal period I instructed all C-3 inmates to exit the mess hall and line up in the Assembly in cell order. As the

> division was lining up I observed [Plaintiff] to be having a loud conversation with [another inmate], who was standing to the side of [Plaintiff]. Both inmates were ordered to cease creating a disturbance and [the other inmate] was ordered to line up in his proper place. No further incident.

*Id.* Defendant Gundrum charged Plaintiff with violating Rules 104.13 (creating a disturbance) and 109.12 (directions relating to movement). *Id.* In the amended complaint, Plaintiff disputes Defendant Gundrum's report that he was having a "loud conversation." Plaintiff alleges that he spoke "moderately and politely" to the other inmate in order to recover "his State provided Workbook." *Id.* at 20.

Defendant Martin conducted the disciplinary hearing on the misbehavior report on September 10, 2010. *Id.* at 8. Plaintiff alleges that Defendant Martin was belligerent and verbally harassed and threatened Plaintiff during the hearing. *Id.* Specifically, Plaintiff alleges that Defendant Martin said:

> This is a small facility . . . We are all one here . .. You wrote grievances against officers and pissed them off . . . I know you from interviewing you for grievances . . . We are gonna make your stay at this facility uncomfortable . . . You have it coming . . . You have more tickets on their way . . . We are gonna fuck with you.

*Id.* Plaintiff alleges that Defendant Martin did not allow him "to properly state[] [his] defense and objection to the inmate misbehavior report and charges." *Id.* Defendant Martin found Plaintiff guilty of the charges. *Id.* at 8, 19. Defendant Martin sentenced Plaintiff to thirteen days' loss of recreation and commissary privileges and one work task. *Id*. at 20.

Plaintiff appealed Defendant Martin's disposition to Defendant Martuscello. *Id.* Plaintiff complained that he was "not afforded the opportunity to properly and fully state[] his objections and defense" at the disciplinary hearing. *Id.* He complained that Defendant Martin had acted

4

with "belligerence [and] malice" and threatened to issue fabricated misbehavior reports and beat him up.  *Id*.  Plaintiff stated that he believed that Defendant Gundrum wrote the misbehavior report "in retaliation [] for his grievances and lawsuits against correction staff[] officers." *Id.* at 22.  He noted that the misbehavior report "does not contain allegations that [Plaintiff] . . . failed to follow the officer's direction." *Id*.

Plaintiff alleges that Defendant Martuscello denied him dental care in retaliation for his grievances.  (Dkt. No. 21 at 9.)  Specifically, Plaintiff alleges that on September 16, 2010 he went to see dental staff.  *Id.* at 10.  The "dental staff said to me that they were going to fix the tooth to cause me pain." *Id.*  Dental Technician John Doe then "improperly, intentionally and maliciously" made direct contact with the nerve of Plaintiff's tooth while filling a cavity.  *Id.*

Plaintiff alleges that he has developed high blood pressure as a result of the harassment by DOCCS officials. *Id*. at 9.  Plaintiff fears for his "life, health, [and] safety." *Id.*  at 3.  Plaintiff requests "an investigation by an independent agency" if he is "found dead or un[]responsive . . . in the custody of Defendants." *Id.*  Plaintiff requests "this Court's special attention and intervention in this matter, as well as its monitoring, permanently." *Id.* at 1.  Plaintiff requests a root canal to remedy the damage to his tooth.  *Id.* at 13.

    **B.**    **Defendants' Motion to Dismiss**

Defendants moved to dismiss the amended complaint.  (Dkt. No. 27.)  Defendants argued that the amended complaint failed to state a retaliation claim because Plaintiff had not alleged facts about his protected activity with sufficient specificity, Plaintiff admitted he was talking when Defendant Gundrum issued the misbehavior report, and mere words do not constitute

adverse action.  (Dkt. No. 27-3 at 10-11.[2])  Defendants argued that the amended complaint failed to state a procedural due process claim against Defendant Martin because Plaintiff was not deprived of any cognizable liberty interest as a result of the disciplinary hearing.  *Id*. at 11.  Defendants argued that the amended complaint did not adequately plead any personal involvement by Defendant Martuscello.  *Id*. at 12-13.  Finally, Defendants argued that DOCCS was entitled to Eleventh Amendment immunity.  *Id*. at 14.  In their reply papers, Defendants argued for the first time that Plaintiff's conspiracy claims should be dismissed.  (Dkt. No. 29-1 at 1-3.[3])

        **C.**      **Ruling on Defendants' Motion to Dismiss**

On August 30, 2011 the Hon. George H. Lowe[4] recommended that (1) Defendants Gundrum and Martin be directed to answer Plaintiff's retaliation claim; (2) the Court dismiss Plaintiff's due process claims against Defendant Gundrum and Martin without leave to amend; (3) the Court *sua sponte* dismiss Plaintiff's Eighth Amendment claims against Defendant Gundrum and Martin with leave to amend; (4) the Court dismiss the claims against Defendant Martuscello with leave to amend; (5) the Court dismiss Plaintiff's claims against DOCCS without leave to amend; and (6) the Court dismiss Plaintiff's conspiracy claims with leave to

---

      [2]      Citations to page numbers in Defendants' Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

      [3]      Citations to page numbers in Defendants' Reply Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

      [4]      Judge Lowe retired on February 9, 2012.  This case was reassigned to me on February 10, 2012.  (Dkt. No. 42.)

amend.  (Dkt. No. 32.)

Judge Lowe recommended granting Plaintiff an opportunity to amend the Eighth Amendment claims because "there is a slight possibility that Plaintiff could amend his complaint to allege some behavior by Defendant[s] that subjected Plaintiff to some extreme deprivation not discussed in the operative complaint."  (Dkt. No. 32 at 16-17, 19.)  Judge Lowe recommended granting Plaintiff an opportunity to amend his claims against Defendant Martuscello to allege facts plausibly suggesting that Defendant Martuscello was personally involved.  *Id*. at 21.  Judge Lowe recommended granting Plaintiff an opportunity to amend his conspiracy claims in order to "include[] . . . facts tending to show that there was a 'meeting of the minds.'"  *Id*. at 24.

Regarding the Doe Dental Technician, Judge Lowe cautioned Plaintiff that he had not timely amended the complaint to name the Doe but granted Plaintiff an additional sixty days to do so.  *Id*. at 23.

The Court adopted Judge Lowe's Report-Recommendation on November 3, 2011.  (Dkt. No. 34.)

      **D.**     **Allegations of the Second Amended Complaint**

Plaintiff filed a second amended complaint on December 27, 2011.  (Dkt. No. 39.)  The second amended complaint is almost identical to the amended complaint.  In fact, the second amended complaint is for the most part a photo copy of the amended complaint.  Plaintiff has made the following changes: (1) DOCCS and Defendant Martuscello no longer appear in the list of parties; (2) Plaintiff has identified the John Doe Dental Technician as Mohammed Khair (Dkt. No. 39 at 2); (3) Plaintiff alleges that the misbehavior report issued by Defendant Gundrum was

eventually expunged from his disciplinary record[5] (Dkt. No. 39 at 11, 44-48); and (4) Plaintiff has attached several pages of dental records (*Id*. at 41-43). The second amended complaint is now before the Court for screening pursuant to 28 U.S.C. § 1915(e).

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a[n] . . . employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). In addition, 28 U.S.C. § 1915(e) directs that when a party proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious [,] fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[6] Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* action, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that an action states a claim and that the claim is not frivolous before permitting a party to continue proceeding *in forma pauperis*. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

---

[5]    This fact is relevant to Plaintiff's retaliation claims. (Dkt. No. 32 at 11-13.)

[6] In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

### III. ANALYSIS

#### A. Eighth Amendment Claims

The second amended complaint, like the amended complaint, does not explicitly make any claims under the Eighth Amendment. Plaintiff has not added any facts plausibly suggesting that Defendants subjected him to cruel and unusual punishment, although the Court granted him leave to amend to do so. Therefore, I recommend that the Court dismiss any Eighth Amendment claims without leave to amend.

#### B. Conspiracy Claims

As he did in the amended complaint, Plaintiff alleges in the second amended complaint that he is the target of a conspiracy. (Dkt. No. 39 at 8-9.) The Court dismissed Plaintiff's conspiracy claims with leave to amend to allege facts plausibly suggesting that there was a meeting of the minds. (Dkt. No. 32 at 23-25.) The second amended complaint does not include any such facts. Therefore, I recommend that the Court dismiss Plaintiff's conspiracy claims without leave to amend.

#### C. Due Process Claims

The Court dismissed Plaintiff's due process claims without leave to amend. (Dkt. No. 32 at 25; Dkt. No. 34 at 5-6.) The second amended complaint continues to allege that Defendants Gundrum and Martin violated Plaintiff's "Fourteen Amendment Constitutional rights." (Dkt. No. 39 at 12.) These claims are not validly asserted and I therefore recommend that the Court dismiss them, once again, without leave to amend.

### D. Claim Against Defendant Khair

The second amended complaint identifies the John Doe Dental Technician as Mohammed Khair. (Dkt. No. 39 at 2.) The Eighth Amendment and retaliation claims against Defendant Khair are sufficiently well-pleaded to survive initial review. Therefore, it is recommended that the Court direct service on Defendant Khair.

### E. Surviving Claims Against Defendants Gundrum and Martin

For the reasons discussed in the Court's previous rulings (Dkt. Nos. 32 and 34), the second amended complaint states retaliation claims against Defendants Gundrum and Martin. Therefore, it is recommended that Defendants be directed to answer the retaliation claims within two weeks of any Order adopting this Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that the amended complaint (Dkt. No. 39) be accepted for filing as the operative pleading in this action; and it is further

**RECOMMENDED** that the Clerk be directed to terminate Defendant Martuscello from this action without leave to amend; and it is further

**RECOMMENDED** that Defendants Gundrum and Martin be directed to answer Plaintiff's retaliation claims within two weeks of any Order adopting this Report-Recommendation; and it is further

**RECOMMENDED** that the Court dismiss the Eighth Amendment claims against Defendants Gundrum and Martin, the conspiracy claims, and the due process claims without leave to amend; and it is further

**RECOMMENDED** that upon receipt from Plaintiff of the documents required for

service, the Clerk shall issue summonses and forward them, along with copies of the second amended complaint (Dkt. No. 39), to the United States Marshal for service upon Defendant Mohammed Khair.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: April 30, 2012
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge