UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CESAR MATEO,

                                       Plaintiff,

                                                                     9:10-CV-1103
v.                                                               (GLS/TWD)

M. GUNDRUM, MARTIN,
MOHAMMED KHAIR,

                                       Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

CESAR MATEO, 01-A-4789
Plaintiff pro se
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788

HON. ERIC T. SCHNEIDERMAN                           JAMES SEAMAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Cesar Mateo claims that Defendant Correction Officer M. Gundrum, Defendant Correction Sergeant Martin, and Defendant dentist Mohammed Khair retaliated against him for filing

lawsuits and grievances. (Dkt. No. 39.) He further claims that Defendant Khair violated his Eighth Amendment rights by providing painful dental care. *Id*. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 60.) As discussed more fully below, I recommend that the Court grant Defendants' motion for summary judgment because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit.

I.    **FACTUAL AND PROCEDURAL SUMMARY**

    A.    **Factual Summary**

Plaintiff, an inmate of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that he filed twenty-nine grievances between May 5, 2003, and November 16, 2009. (Dkt. No. 39 at 27.[1]) Plaintiff alleges that there is a wide-reaching conspiracy against him, motivated "racially and personally" because Plaintiff has filed so many grievances against DOCCS staff members. *Id*. at 9.

In June 2010, Plaintiff arrived at Coxsackie Correctional Facility. (Dkt. No. 39 at 21.) On August 7, 2010, Plaintiff filed a grievance. *Id*. at 32. He complained that he had discovered a dead insect in his medically prescribed meal. *Id*. He stated that the officers in the cafeteria refused to provide him with another meal. *Id*. He noted that the "incident occurred a day after I was interviewed by a correction sergeant in reference to my previously filed grievance regarding not receiving my prescribed diet." *Id*. at 33.

Plaintiff wrote a letter to the Hon. Stan L. Pritzker, Acting Justice of the Washington

---

[1] Page numbers in citations to the second amended complaint refer to the page numbers assigned by the Court's electronic filing system.

2

County Supreme Court. (Dkt. No. 39 at 14.) Plaintiff complained that he was being harassed and retaliated against by prison staff. *Id.* In the letter, Plaintiff stated that the day after he filed his grievance regarding his meal, an officer came to his cell and told him to pack up his property to move out of that unit and into Division C-3. *Id.* The officer told Plaintiff that he would be beaten and said "hope you'll enjoy going to the hospital." *Id.* Plaintiff asked Judge Pritzker to protect his rights. *Id.*

In a grievance filed with the Inmate Grievance Resolution Committee, Plaintiff alleged that before he moved to Division C-3, an officer came to his cell and told him to go see the Sergeant. (Dkt. No. 39 at 16.) The Sergeant asked if Plaintiff had written grievances. *Id.* When Plaintiff said that he had, the Sergeant threatened to frame him, write a false misbehavior report, and restrict his privileges. *Id*.

Plaintiff alleges that Defendant Correction Officer M. Gundrum, the officer in charge of Division C-3, "is known for retaliating [against and] harassing inmates on behalf of his fellow[] officers." (Dkt. No. 39 at 7.) Plaintiff alleges that Defendant Gundrum stopped by Plaintiff's cell on September 8, 2010, and said "I'm gonna have fun with you." *Id.* Plaintiff alleges that Defendant Gundrum issued a false misbehavior report against him later that day. *Id.* In the report, Defendant Gundrum stated that he:

> was supervising C-3 Division inmates during the morning chow run. At the completion of the meal period I instructed all C-3 inmates to exit the mess hall and line up in the Assembly in cell order. As the division was lining up I observed [Plaintiff] to be having a loud conversation with [another inmate], who was standing to the side of [Plaintiff]. Both inmates were ordered to cease creating a disturbance and [the other inmate] was ordered to line up in his proper place. No further incident.

*Id.* at 18. Defendant Gundrum charged Plaintiff with violating Rules 104.13 (creating a

disturbance) and 109.12 (directions relating to movement). *Id*. In the second amended complaint, Plaintiff disputes Defendant Gundrum's report that he was having a "loud conversation." Plaintiff alleges that he spoke "moderately and politely" to the other inmate in order to recover "his State provided Workbook." *Id.* at 20.

Defendant Martin conducted the disciplinary hearing on the misbehavior report on September 10, 2010. (Dkt. No. 39 at 8.) Plaintiff alleges that Defendant Martin was belligerent and verbally harassed and threatened Plaintiff during the hearing. *Id.* Specifically, Plaintiff alleges that Defendant Martin said:

> This is a small facility . . . . We are all one here . . . . You wrote grievances against officers and pissed them off . . . . I know you from interviewing you for grievances . . . . We are gonna make your stay at this facility uncomfortable . . . . You have it coming . . . . You have more tickets on their way . . . . We are gonna fuck with you.

*Id.* Plaintiff alleges that Defendant Martin did not allow him "to properly state[] [his] defense and objection to the inmate misbehavior report and charges." *Id.* Defendant Martin found Plaintiff guilty of the charges. *Id.* at 8, 19. Defendant Martin sentenced Plaintiff to thirteen days' loss of recreation and commissary privileges and one work task. *Id*. at 20.

Plaintiff appealed Defendant Martin's disposition to Coxsackie Superintendent Daniel Martuscello on September 11, 2010. (Dkt. No. 39 at 20-23.) Plaintiff complained that he was "not afforded the opportunity to properly and fully state[] his objections and defense" at the disciplinary hearing. *Id*. He complained that Defendant Martin had acted with "belligerence [and] malice" and threatened to issue fabricated misbehavior reports and beat him up. *Id*. Plaintiff stated that he believed that Defendant Gundrum wrote the misbehavior report "in retaliation [] for his grievances and lawsuits against correction staff[] officers." *Id.* at 22. He

4

noted that the misbehavior report "does not contain allegations that [Plaintiff] . . . failed to follow the officer's direction." *Id.*

Plaintiff was never assigned any work task as a result of Defendant Martin's hearing disposition. (Dkt. No. 60-20 ¶ 41; Dkt. No. 63 ¶ 1.) Plaintiff alleges that the misbehavior report issued by Defendant Gundrum was eventually expunged from his disciplinary record. (Dkt. No. 39 at 11, 44-48.)

Plaintiff received dental care from Defendant Khair in June and September 2010. (Dkt. No. 60-20 ¶¶ 44, 57; Dkt. No. 63 ¶¶ 1, 3.) Plaintiff alleges that at the September appointment, Defendant Khair "said to me that [he was] going to fix the tooth to cause me pain." (Dkt. No. 39 at 10.) Plaintiff alleges that Defendant Khair then "improperly, intentionally and maliciously" made direct contact with the nerve of Plaintiff's tooth while filling a cavity. *Id.*

B. Procedural History

Plaintiff signed and mailed the original complaint in this action on September 13, 2010, just two days after appealing Defendant Martin's disciplinary decision. (Dkt. No. 1.) Plaintiff filed an amended complaint as of right on February 3, 2011. (Dkt. No. 21.)

Defendants moved to dismiss the amended complaint. (Dkt. No. 27.) Defendants argued that the amended complaint failed to state a retaliation claim because Plaintiff had not alleged facts about his protected activity with sufficient specificity, Plaintiff admitted he was talking when Defendant Gundrum issued the misbehavior report, and mere words do not constitute adverse action. (Dkt. No. 27-3 at 10-11.[2]) Defendants argued that the amended complaint failed

---

[2] Citations to page numbers in Defendants' Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

to state a procedural due process claim against Defendant Martin because Plaintiff was not deprived of any cognizable liberty interest as a result of the disciplinary hearing. *Id*. at 11. Defendants argued that the amended complaint did not adequately plead any personal involvement by Superintendent Martuscello, who was named as a defendant in both the original and the amended complaint. *Id*. at 12-13. Finally, Defendants argued that DOCCS, which was named as a defendant, was entitled to Eleventh Amendment immunity. *Id*. at 14. In their reply papers, Defendants argued for the first time that Plaintiff's conspiracy claims should be dismissed. (Dkt. No. 29-1 at 1-3.[3])

On August 30, 2011, the Hon. George H. Lowe[4] recommended that (1) Defendants Gundrum and Martin be directed to answer Plaintiff's retaliation claim; (2) the Court dismiss Plaintiff's due process claims against Defendants Gundrum and Martin without leave to amend; (3) the Court sua sponte dismiss Plaintiff's Eighth Amendment claims against Defendants Gundrum and Martin with leave to amend; (4) the Court dismiss the claims against Superintendent Martuscello with leave to amend; (5) the Court dismiss Plaintiff's claims against DOCCS without leave to amend; and (6) the Court dismiss Plaintiff's conspiracy claims with leave to amend. (Dkt. No. 32.) The Court adopted Judge Lowe's Report-Recommendation on November 3, 2011. (Dkt. No. 34.)

---

[3]  Citations to page numbers in Defendants' Reply Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[4]  Judge Lowe retired on February 9, 2012. This case was reassigned to me on February 10, 2012. (Dkt. No. 42.)

Plaintiff filed the second amended complaint, which is the operative complaint in this action, on December 27, 2011. (Dkt. No. 39.) Upon an initial screening of the second amended complaint, the Court (1) dismissed all Eighth Amendment claims against Defendants Gundrum and Martin without leave to amend; (2) dismissed all conspiracy claims without leave to amend; (3) dismissed all due process claims without leave to amend; (4) found that the retaliation and Eighth Amendment claims against Defendant Khair were sufficiently well-pleaded to survive initial review; and (5) directed Defendants Gundrum and Martin to answer Plaintiff's retaliation claims. (Dkt. Nos. 47 and 49.)

As a result of the amendments to the complaint and the Court's previous rulings, the claims remaining in this action are: (1) a retaliation claim against Defendant Gundrum; (2) a retaliation claim against Defendant Martin; (3) a retaliation claim against Defendant Khair; and (4) an Eighth Amendment claim against Defendant Khair.

Defendants answered the operative complaint on June 6, 2012. (Dkt. No. 53.) Defendants now move for summary judgment of all remaining claims. (Dkt. No. 60.) Plaintiff has opposed the motion. (Dkt. No. 63.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir.

2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal

---

[5] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**III.     ANALYSIS**

Defendants argue that this action must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[6] (Dkt. No. 60-21 at 15-16.[7]) Defendants are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following

---

[6]     Defendants also argue, on the merits, that Plaintiff has not raised a triable issue of fact regarding his retaliation and Eighth Amendment claims. (Dkt. No. 60-21 at 2-14.) Because I find that Defendants' exhaustion argument is dispositive, I have not addressed their other arguments.

[7]     References to page numbers in citations to Defendants' memorandum of law are to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

DOCCS has a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a "grievance" process. In fact, the regulations

specifically state that the results of disciplinary hearings are "non-grievable." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1)-(2) (2010). For Tier I disciplinary hearings such as the one at issue in this case, the appeal is to the facility superintendent. N.Y. Comp. Codes R. & Regs. tit. 7, § 252.6 (2010). The appeal must be submitted within twenty-four hours of receipt of the hearing officer's written disposition. *Id*. The superintendent or his designee must issue a decision within seven days of receiving the appeal. *Id*. An inmate's appeal of a disciplinary hearing decision "constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for adjudication in federal court." *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009). An inmate claiming that a disciplinary procedure has been instituted or unfairly conducted as the result of retaliatory motives must, however, follow the IGP three-step process rather than the disciplinary hearing appeal process in order to properly exhaust administrative remedies. *See Giano v. Goord*, 380 F.3d 670, 678-79 (2d Cir. 2004).

Here, it is undisputed that Plaintiff failed to exhaust his administrative remedies. Most egregiously, Plaintiff filed this lawsuit several days *before* his second appointment with Defendant Khair. Indeed, Plaintiff admits in the second amended complaint that he never filed a grievance regarding the incidents that are the subject of this lawsuit. (Dkt. No. 39 at 2.)

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[8]

First, "the court must ask whether [the] administrative remedies [not pursued by the

---

[8] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, as discussed above, administrative remedies were available to Plaintiff. Defendants asserted the exhaustion defense in their answer to the operative complaint and thus have not waived it. (Dkt. No. 53 ¶ 15; *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).) Defendants are not estopped from asserting the exhaustion defense because there is no evidence that any of the named Defendants prevented Plaintiff from exhausting his administrative remedies. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).

Plaintiff argues that his failure to exhaust is excused by special circumstances. The operative complaint alleges that Plaintiff's "speech has been chilled. I respectfully request this Court to excuse or exempt me from the exhaustion requirement as special circumstances [have]

13

been plausibly alleged to justify it." (Dkt. No. 39 at 2.)

Before analyzing Plaintiff's argument, it is important to note that Plaintiff does *not* argue that his failure to exhaust is excused because he misunderstood the procedures for challenging Defendants' actions. Specifically, Plaintiff does *not* argue that he believed that his disciplinary appeal constituted proper exhaustion as to Defendants Gundrum and Martin. Rather, Plaintiff admits that he did not exhaust his administrative remedies. (Dkt. No. 39 at 2.) This is logical because Plaintiff was advised of the requirement to exhaust retaliation claims through the three-step IGP process rather than through disciplinary appeals in earlier litigation. *See Mateo v. Corebine*, No. 09 Civ. 04811 (RJH) (DCF), 2010 U.S. Dist. LEXIS 97721, 2010 WL 3629515 (S.D.N.Y. Sept. 17, 2010).

Rather, Plaintiff argues that his failure to exhaust was justified by his fear of reprisal. At his deposition, Plaintiff testified that the Court should excuse his failure to exhaust "[d]ue to the circumstances, the first misbehavior report, the threat[s] that I was receiving from staff and the harm that has been done to my tooth . . . ." (Dkt. No. 60-2 at 119:13-18.) Plaintiff identified four threats. First, Plaintiff testified that an officer came to Plaintiff's cell after Plaintiff filed the grievance regarding a special diet meal and told Plaintiff to "enjoy the ride to the hospital." (Dkt. No. 60-2 at 74:21-75:25.) Second, Plaintiff testified that the sergeant who investigated Plaintiff's grievance about the diet meal "issued me a few threats of harm and typically when this happens in prison, a physical assault happens immediately." (Dkt. No. 60-2 at 76:9-12.) Third, Plaintiff testified that the same sergeant and some other officers told him that he was being moved to the C-block in order to be assaulted. (Dkt. No. 60-2 at 83:6-24.) Fourth, Plaintiff testified that:

> While I was at Coxsackie Correctional Facility in many instances there were incidents that officers went as far as getting me out of the

14

> cell on the excuse I had an appointment, a medical appointment, . . . to get me going down to the first floor in the housing unit and down there will be four, six officers which indicated to me that I was going to be physically assaulted and somehow somebody got on the radio and the officer listen to the radio and they kind of back off and went their way.[9]

(Dkt. No. 60-2 at 89:18-90:6.) Plaintiff testified, however, that he was never actually assaulted at Coxsackie Correctional Facility. (Dkt. No. 60-2 at 84:5-7.)

Defendants argue that these threats are insufficient to establish special circumstances. (Dkt. No. 60-21 at 16.) Defendants are correct. The issue of whether special circumstances justify a prisoner's failure to comply with administrative procedural requirements "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. Here, despite the threats of harm that Plaintiff allegedly received, he promptly appealed his disciplinary disposition to the facility's superintendent. This indicates that Plaintiff was not deterred from accessing the facility's mechanisms for redressing inmate concerns. Plaintiff admits that he was never physically harmed while at Coxsackie. (Dkt. No. 60-2 at 84:5-7.) Thus, the threats of harm he allegedly received after filing the grievance about his meal amounted to nothing. Therefore, Plaintiff has not plausibly alleged the existence of special circumstances justifying his failure to exhaust.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 60) be **GRANTED**.

---

[9] Plaintiff testified that none of the named Defendants was present for this incident. (Dkt. No. 60-2 at 90:7-13.)

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 30, 2013
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge